JOSEPHINE STEWART, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 23259.   Promulgated January 5, 1951.

*Whitfield H. Marshall, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

4

OPINION.

ARUNDELL, *Judge:* The deficiencies herein arise from the respondent's determination that the administration of the estate of C. Jim Stewart was concluded prior to the taxable year 1942 within the mean-

ing of Regulations 111, section 29.162-1 [1] and, therefore, the income received and reported by the estate during the taxable years 1942 to 1945, inclusive, was properly taxable to the beneficiary, the petitioner herein.

The validity of the Regulations relied upon by the Commissioner has been recognized in *Frederich* v. *Commissioner*, 145 Fed. (2d) 796 (CA-5), and in *Chick* v. *Commissioner*, 166 Fed. (2d) 337 (CA-1). The principal issue involved in both cases concerned the extent of the authority vested in the Commissioner and this Court to determine when the administration of a decedent's estate has been concluded for Federal tax purposes. In *Frederich* v. *Commissioner*, *supra*, it was held that an estate is to be considered as being in administration during the time actually required by the executor or administrator to settle its affairs and that the valid orders of local probate courts in respect to the continuance of administration are binding upon both the Commissioner and this Court. In *Chick* v. *Commissioner*, *supra*, it was held that Congress can, and in the interest of a uniform system of Federal taxation did, clothe the Commissioner and the Tax Court with the power to determine, in the absence of conflicting valid affirmative action by the state court having jurisdiction in the premises, when an estate has ceased to be in the process of administration or settlement and has ceased to exist for income tax purposes on the basis of actual performance of ordinary duties of administration.

We think it appropriate at the outset to explain why we believe that the facts of the instant case are distinguishable in at least two material respects from the facts of the cases discussed above and require us to base our decision herein primarily upon the petitioner's conduct in handling the assets of the estate. The estate herein was not subject to the jurisdiction of a local probate court as in *Chick* v. *Commissioner*, *supra*, nor was it being continued in administration pursuant to the order of a local probate court as was the case in *Frederich* v. *Commissioner*, *supra*. Petitioner occupied the position of an independent executrix and after she had complied with the statute by probating and recording the decedent's will and by filing an inventory, an appraisement and a list of claims of the estate, she acted directly under the powers granted to her by the will and without further interference by the probate court. See 34 C. J. S. 1349; Simkins, Administration of Estates in Texas (3d ed.), sec. 128, pp.

---

[1] Regulations 111:

SEC. 29.162-1. INCOME OF ESTATES AND TRUSTS.—* * *

The income of an estate of a deceased person, as dealt with in the Internal Revenue Code, is therein described as received by the estate during the period of administration or settlement thereof. The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time *actually required for this purpose*, whether longer or shorter than the period specified in the local statute for the settlement of estates.

170, 171. As independent executrix she had the authority to close the administration of the estate and surrender all or any portion of its assets to the heirs or devisees without the formality of judicial sanction. Nor was she required to make a formal report. *Parks* v. *Knox*, 61 Tex. Civ. App. 493, 130 S. W. 203; *Leach* v. *Leach* (Civ. App.) 208 S. W. (2d) 618.

Moreover, the petitioner had virtually complete authority to deal with the estate as she saw fit for in addition to the wide powers she enjoyed as an independent executrix she was also the sole beneficiary [2] under the decedent's will. Thus, the petitioner, unlike the executors in *Frederich* v. *Commissioner*, and *Chick* v. *Commissioner*, *supra*, was able to administer the decedent's estate without the interference of a probate court and at all times possessed the right to settle the estate with herself as the sole beneficiary without judicial sanction or the filing of a final report.

Turning to the facts in the instant case, we find that petitioner filed decedent's will and duly qualified as independent executrix shortly after decedent's death on May 22, 1938. On April 12, 1939, she filed her inventory and appraisement of the estate which was approved by the county court on the same date. Prior to December 31, 1938, petitioner had paid all claims against the estate with the exception of $7,000, representing one-half of the principal amount of a note secured by a deed of trust on real property owned by the decedent and J. R. Stevenson. The appraisal filed by petitioner listed the value of the decedent's one-half interest in this property at $14,234.75 which was in excess of the total amount of the note. If this indebtedness was in fact an obligation of the estate, there appears to have been no good reason for petitioner's having allowed this one remaining liability to go unsatisfied other than possibly to meet the convenience of J. R. Stevenson, decedent's co-owner. In any event, it is clear that the decedent's obligation on this note was not of a character to require a continuation of administration and a postponement of settlement and distribution of the estate. The only practical accomplishment of administration which could have been expected in the instant case was the payment of the unsecured debts of the estate, for the petitioner in her dual capacity as independent executrix and sole beneficiary had no one to satisfy or to deal with other than the creditors of the estate and herself. In fact, there was no necessity of disposing of the realty in question or to use the other assets of the estate to discharge the note inasmuch as the holder of the note was amply secured by the deed of trust and the property was readily distributable subject to the indebtedness. Therefore, the petitioner's satisfaction of this note

[2] There is some question as to whether the petitioner was anything more than the life beneficiary of certain property specifically willed to her daughter, Aileen [Aline] Stewart Langham.

by regular installments from 1938 to 1945 did not, in our opinion, constitute one of her administrative duties as independent executrix.

In fact, we can find no ordinary or extraordinary administrative duties thereafter required of the petitioner. Although the partnership agreement and the will provided for the continuation of the partnership for a 5-year period after the decedent's death, we do not understand those instruments to require that administration be continued for that period. In any event, there is ample evidence of conduct on the part of petitioner which we regard as inconsistent with her contention that administration lasted beyond the time determined by the respondent.

As early as 1939 petitioner assented as to the transfer of approximately 15 per cent of the partnership assets to a corporation formed to take over the partnership's Duco distributing business. Even though this action was in the interest of the partnership as such, it can hardly be regarded as a step in the orderly administration of the estate. Nor do we think that the full right of management and control vested in the surviving partners by the partnership agreement or the authority granted the petitioner to continue the interest of the estate in a *partnership* for 5 years required or empowered the petitioner as *executrix* to assent to such a far-reaching change in the character of the estate's assets. Petitioner's participation in the transfer of assets of the partnership to a corporation was certainly not pursuant to any express grant contained in the will and, coming as it did after the completion of all ordinary administrative duties, indicates to us that she could not have seriously regarded the estate as then being in the process of administration. The fact that the shares in the newly formed corporation were issued to her in her individual name rather than as executrix is not without significance.

In October 1943 petitioner consented to a reduction of approximately 8 per cent in what had been decedent's interest in the partnership in order to permit the admission of Donald Stevenson as a partner. It hardly seems within the scope of an executrix's authority to give up so important a part of a decedent's estate without consideration. A more reasonable interpretation of petitioner's conduct is that she believed her administrative responsibility had ended and that she was free to deal as she wished with the assets of the estate as the sole beneficiary.

Furthermore, during the taxable years the distribution of income attributable to the decedent's interest in the partnership was handled in such a manner as to disregard the separateness of the estate from the petitioner as beneficiary and to further a calculated plan for employing the estate as a device to minimize income taxes. In each year the share of partnership income which was payable in respect

to the decedent's interest was duly credited to the estate's account on the partnership books. However, no distribution was made to the estate but instead one-half of the amount so credited to the estate was distributed directly to the petitioner. The restrictions contained in the partnership agreement as to withdrawal of partnership funds by the personal representative or the heirs and legatees of the decedent applied only to partnership capital and we know of no good reason for the parties' conduct in eliminating the estate from its rightful participation in the distribution of partnership income unless it was honestly believed that administration of the estate had already been completed.

Moreover, the distribution of exactly one-half of the income in each year directly to the petitioner individually, without regard to her personal needs, and her subsequent reimbursement of the same amount to the partnership is further evidence that the sole purpose of holding the estate open was to attempt to divide the total income for Federal tax purposes, as a distribution of all the income to either the estate or the petitioner as beneficiary would have resulted in a greater over-all tax than splitting it equally between the two. The superficiality of the arrangement is further demonstrated by the total lack of any explanation as to what if any recognition was given to the petitioner by the partnership for the funds she later returned to the business. In our opinion, this evidence clearly demonstrates the lack of any necessity or reality for the petitioner's purported continuance of administration during the taxable years in question.

We think it is particularly significant that the petitioner allowed the decedent's interest to remain in the partnership after May 22, 1943, the termination date provided for in the partnership agreement of January 2, 1935, when it certainly must have been clear to all concerned that in so doing she was not acting in her administrative capacity as executrix or within her authority under the decedent's will.

Ordinarily a partnership is dissolved by operation of law upon the death of a member. *Mary D. Walsh*, 7 T. C. 205; *Charles F. Coates*, 7 T. C. 125. An exception to this rule exists where the articles of partnership and the will authorize the estate to continue the decedent's interest in a partnership. The need of express authority in the will is as necessary in the case of an independent executor as it is in the case of an ordinary executor. *Altgelt* v. *Sullivan & Co.* (Civ. App.) 79 S. W. 333; *Altgelt* v. *Alamo Nat. Bank*, 98 Tex. 252, 83 S. W. 6; Simkins, *supra*, sec. 135.

The rule stated in Simkins, Administration of Estates in Texas (3d ed.), sec. 135, p. 182, in respect to this question is as follows:

In continuing the business of the testator, which includes a mercantile business, it is entirely within the discretion of the independent executor to determine whether it would be for the best interests of the estate to do so, and he is not.

responsible for losses unless he clearly has failed to exercise a reasonable discretion with the lights before him. However, a partnership business cannot be continued by him, unless the will specifically so provides. [Footnotes and citations omitted.]

Petitioner had no authority to continue the estate in the partnership after May 22, 1943, even if, as petitioner contends, the estate was still in the process of administration at that time. On that date, the partnership established by the partnership agreement of January 2, 1935, terminated and any partnership which continued thereafter had to be a new partnership. The fact that petitioner considered that she had the authority to permit the decedent's interest to be carried over into this new partnership indicates to us that she must have believed that administration of the decedent's estate had been completed at some time prior thereto and that she had some source of authority other than that granted by decedent's will.

Petitioner puts great stress upon the business necessity for the estate's interest remaining in the business throughout the war years when the partnership had assumed the responsibility for completing large war contracts. We can readily understand why it was advantageous to all concerned that the partnership capital be left intact. However, we do not understand how the petitioner could better serve the partnership business by continuing the estate as a partner than by concluding administration and continuing the estate's interest in the partnership as its sole beneficiary. Cf. *Chick* v. *Commissioner*, *supra*. The partnership agreement and the will guaranteed the surviving partners wide discretion in the determination of business policies and management for a period of 5 years after the decedent's death and was binding upon the decedent's *heirs and legatees* as well as his personal representative. Thus the apprehension about a woman's interference in the partnership's business was unnecessary as the petitioner's winding up of the estate prior to the expiration of the 5-year period would not have permitted her to exercise any greater voice in partnership affairs than she already enjoyed as an independent executrix.

We think that petitioner's claims that business necessity prevented her from concluding the administration of the decedent's estate and withdrawing its interest from the partnership during the years in question loses much of its force in the light of events which occurred in 1947. Although the petitioner takes the position that the decedent's interest could not have been settled without its withdrawal from the partnership and a resulting impairment of partnership capital, the evidence shows that in 1947 the interests of the decedent and the other partners were effectively withdrawn from the partnership by transferring its operating assets to a corporation in exchange for stock. The partnership in which the estate purportedly remained

a member retained assets consisting of Government bonds and was thereafter an inactive organization. According to our understanding of petitioner's arguments, the final administration of decedent's interest was then accomplished merely by changing the title of an account on the partnership books from "Estate" to "Mrs. Josephine Stewart." Even should the argument be accepted that business necessity is material to a determination of the issue herein, we cannot understand why the same action taken by the parties to settle the decedent's interest in the partnership in 1947 could not have been carried out in the same fashion at any time prior to or during the taxable years in question.

Nor do we think that a decedent, by providing in his will that the period of administration of his estate will continue for a period of time unrelated to the performance of the ordinary duties of administration, may require the Commissioner or this Court to adopt his declaration for Federal tax purposes. It seems clear enough that taxpayers may not by private agreement between themselves, or by their own characterization of a transaction, or the nature of a business, bind the Commissioner and this Court as to tax matters arising therefrom and we see no good reason why, in determining when the period of administration has ceased for tax purposes, the terms of a decedent's will requiring that the period of administration remain open for reasons unrelated to the performance of the ordinary duties of administration should be controlling.

It is not necessary that we fix a specific date for the ending of the administration of the decedent's estate. An identifiable act or event such as a decree discharging an executor by a local probate court may not be found in the case of an independent executor. This is particularly true where the independent executor is also the sole beneficiary under the decedent's will. In fact, the petitioner herself does not attempt to cite any specific act or event occurring in 1947 as indicative of the final closing of administration.

The record in its entirety and particularly those facts we have discussed above showing an early completion of the ordinary administrative duties, conduct by the petitioner in respect to the estate's interest in the partnership inconsistent with her fiduciary capacity as executrix, the manner of handling of the estate's distributive share of partnership income, and the continuation of the estate's interest in the partnership after May 22, 1943, lead irresistibly to the conclusion that the administration of the estate of C. Jim Stewart was in fact completed and was so regarded by the interested parties at some time prior to the beginning of the taxable year 1942, as determined by the respondent. We so hold.

*Decision will be entered for the respondent.*