E. W. BROWN, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GLADYS SLADE BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21343, 23426, 21344, 23425.　Promulgated October 28, 1952.

*L. J. Benckenstein, Esq.,* for the petitioners.
*F. S. Gettle, Esq.,* and *M. Clifton Maxwell, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge:* The first issue to be determined is whether the legal fees and expenses incurred by the petitioner in connection with the settlement of the claim made by Babette Moore Odom are deductible by the taxpayers. It is the taxpayers' contention that section 23 (a) (2) of the Internal Revenue Code[1] authorizes deduction of such expenses from gross income as ordinary and necessary expenses incurred in the production or collection of income or in connection with the management, conservation or maintenance of property held for the production of income.

The respondent urges that the amounts were expended for the purpose of defending and perfecting title to property, and are not deductible. See Regs. 111, sec. 29.23 (a)–15.

It is clear, especially from the written agreement of settlement, that the Odom contention attacked both the validity of the will and the title to the properties transferred to petitioner by his mother's gifts. If pressed to a successful conclusion in the courts, it would, in all probability, have caused both the will and the gifts to be declared invalid. Such a result was a real threat to petitioner's title to property owned or in expectation. That the threat was of real consequence, despite the opinion of counsel that it had no merit, appears when it is observed

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
    In computing net income there shall be allowed as deductions:
    (a) EXPENSES.—
        *       *       *       *       *       *       *
        (2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

that the agreement provided for the payment of some $314,000 to Babette, in addition to assuring her of her full share under the will. This sum was substantial even where the total amount involved runs into millions. Certainly, it is not *de minimis*.

True, the above conclusion would have deprived petitioner of income from the properties, but such income is once removed in propinquity from the fundamental and basic fact, i. e., that petitioner would first have lost whatever title he then had or claimed either under the will or the gifts. Petitioner's rights to income depended directly and entirely on the possession of title to the property producing the income.

There are many cases holding that the fees paid to defend or perfect or acquire title are capital expenditures and not deductible. *James C. Coughlin*, 3 T. C. 420; *Porter Royalty Pool, Inc.*, 7 T. C. 685; *Marion A. Burt Beck*, 15 T. C. 642, affd. 194 F. 2d 537. The facts of record, and notably the provisions of the settlement agreement, together with the necessary implications arising therefrom, support the conclusion that the expenditures here made were capital expenditures for defending or perfecting title. Such expenses were not incurred in the production or collection of income nor were they incurred in the management, conservation or maintenance of property held for the production of income.

If it be argued that at least some part of the fees was incurred in defense of income and that an apportionment or allocation should be made, as was done in *William A. Falls*, 7 T. C. 66, it must be rejoined that the record contains no data which could be used as a guide or basis in such an allocation. To do so would be purely arbitrary and speculative. In fact, we may properly observe that such proof may be extremely difficult, perhaps impossible.

The proof being as it is, we have no alternative to a holding that the legal expenses here involved were of a capital nature, and accordingly, not deductible from income.

The second issue is whether the administration of the estate of Carrie L. Brown was terminated in 1945 or 1946, causing income and gains of those years to be taxable to petitioner and his wife rather than the estate.[2] Carrie L. Brown's will specifically requested that

---

[2] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \* \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year

no action be had on her estate other than the probating and recording of her will and the filing of inventory, appraisement and list of claims. The period of administration is the time required to perform the ordinary duties pertaining to administration. *William C. Chick*, 7 T. C. 1414, affd. 166 F. 2d 337; Regs. 111, sec. 29.162–1.

The determination of the date on which administration of an estate is concluded calls for a practical approach. The estate of Carrie L. Brown consisted of large interests in real property, corporate securities, capital, mineral rights and royalties. She died in October 1941. Her will was probated soon thereafter. Estate and inheritance taxes were paid in 1945 and partitioning was commenced. The settlement agreement with Babette Moore Odom was reached in 1945. No problem concerning the collection of assets and payment of debts requiring continuance of administration existed after 1945 and there appears no valid reason why administration was not legally concluded in that year. Partitioning of the estate did not require extension of the period of administration. It is conceivable that much of the property might never have been partitioned. As the management of the extensive holdings of the estate is not an administrative duty compelling the continuance of the administration period, and since the same process could as well have been carried out without such continuance, we find no basis for an extension of the administration period into 1946. *Josephine Stewart*, 16 T. C. 1, affd. 196 F. 2d 397; *Joseph M. Roebling*, 18 T. C. 788. It is our conclusion that the period of administration terminated in 1945.

*Decisions will be entered under Rule 50.*

which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. ₁Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;