SIDNEY N. LEFIELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28951. Promulgated March 30, 1953.

*Louis Janin, Esq.*, for the petitioner.
*John D. Picco, Esq.*, for the respondent.

1164

1166

1168

1174

OPINION.

HARRON, *Judge:* Under section 161 (a) (3) of the Code, an estate is a taxable entity "during the period of administration or settlement of the estate." Regulations 111, sec. 29.161–2, provides, in part, as follows:

The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates.

The respondent relies upon the above cited regulation. He contends that under the facts, the period of administration of the LeFiell estate, for the purpose of Federal income tax, was concluded before January 1, 1944.

The petitioner contends that since the California probate court having jurisdiction over the LeFiell estate's administration determined in March 1951, that the period of administration had not been concluded in any year up to and including 1951, the respondent is precluded from making the determination which he has made; that under section 161 (a) (3) of the Code, the estate was a taxable entity in 1944, 1945, and 1946, taxable on the estate income in question; and that the respondent and this Court are bound by the California probate court's Order of March 8, 1951, in which it was stated that the estate was not in a condition to be closed. The petitioner relies upon *Frederich* v. *Commissioner*, 145 F. 2d 796, reversing 2 T. C. 936. The petitioner argues that the Order of March 8, 1951, of the California court, was not obtained fraudulently or collusively, and that it was predicated upon sound considerations, namely, the circumstances surrounding petitioner's continuation of the operation of the LeFiell Company business, the circumstances relating to Cecil LeFiell's assignments of his interest in the estate of Ella LeFiell, and the provision in the settlement agreement with Ella LeFiell under which she is to receive $150 per month for life. The petitioner takes the position that the latter agreement puts upon the estate a continuing obligation to Ella LeFiell which requires prolonging the period of administration.

Under the issue presented, we must decide, for the purpose of Federal estate tax, whether the estate was a taxable entity in the taxable years, i. e., what period was required for administration of the estate. The regulation of the respondent refers to the time "actually required" for the performance of the ordinary duties of administration. The petitioner, as we understand his argument, does not attack the regulation, but, rather, he questions the propriety of the respondent's application thereof to the facts in this proceeding. The regulation has been cited with approval frequently. *Chick* v. *Commissioner*, 166 F. 2d 337, certiorari denied 334 U. S. 845, affirming 7 T. C. 1414; *Estate of J. P. Armstrong*, 2 T. C. 731, 734; *Josephine Stewart*, 16 T. C. 1, affd. 196 F. 2d 397.

Our first considerations are directed to the Order of March 8, 1951, of the California probate court, and to a prior Order of the same court dated May 19, 1944. The petitioner has failed to take into account the relationship of the 1951 Order to the 1944 Order. His argument suffers from his placing complete reliance upon the 1951 Order, which did not vacate and set aside the chief findings and conclusions of the 1944 Order. The 1951 Order, admittedly, was a "clarifying" Order. Although it corrected the earlier Order on the point that the obligation to pay Ella LeFiell an annuity was an obligation of the estate, it did not change any of the provisions of the 1944 Order which are material to the issue presented here. For example, on May 19, 1944, the probate court approved all of the settlement agreements, those of Aileen, Cecil, and Ella, and. it found that Sidney LeFiell was the sole person interested in the estate subject only to the charge to pay Ella $150 per month for life out of the assets of the estate; the court found that all taxes, debts, and claims against the estate had been paid; and the court, also, approved the administrator's report and account in which he claimed a fee for operating the LeFiell Company business for the estate and reported that he had not liquidated the business for cash because it was worth more as a going concern, and, as a consequence, he had continued to operate the business. Later, in 1951, the California court approved the administrator's action in continuing to operate the business and in abstaining from liquidation thereof; the court reapproved the agreement of May 18, 1943, with Ella LeFiell; and the court did not retract its earlier approval of the settlement agreements of Aileen and Cecil. It is apparent, therefore, that the condition of the estate was the same in 1951 as it was in 1944, and that the 1951 Order of the California court was in substance, in so far as material here, no more than one which clarified and corrected the 1944 Order. The 1951 Order, however, contained the proviso that the estate was not in a condition to be closed, which was not contained in the 1944 Order. It is this provision in the court's Order upon which

the petitioner relies in this proceeding, and he admits that the basis for the provision was the charge in Ella's favor to provide her with an annuity.

Upon consideration of all of the facts, we cannot find that the time actually required for the administration of the LeFiell estate extended beyond May 19, 1944. It is true that all of the debts and obligations of the estate had been paid before March 26, 1943, and that all of the agreements of legatees and heirs settling their claims against the estate had been executed before June 1943, but the settlement agreements of the legatees and heirs, which were executed in May 1943, required approval by the probate court. As this Court stated in the *Chick* case, *supra*, p. 1421, executors are allowed a reasonable time within which to do all the things required in the administration of an estate. The administrator of the LeFiell estate filed in the probate court a petition for approval of the agreements and his account on May 3, 1944, and the probate court gave its approval on May 19, 1944. We do not think that there was any unreasonable delay on the part of the administrator in so doing. Accordingly, we do not sustain the respondent's contention that the period of administration did not extend beyond December 31, 1943.

On the other hand, when, on May 19, 1944, the probate court approved the settlement agreements, and found that all debts and taxes had been paid, and that Sidney LeFiell was the sole person interested in the estate subject only to the agreement to pay Ella LeFiell $150 per month for life out of the estate assets, nothing remained to be done in the administration of the estate. It is noted, also, that the administrator's plan, as set forth in his Petition for Distribution of March 26, 1943, was to pay the heirs and legatees their respective shares in the estate, in cash, and that plan was effectuated by the settlement agreements executed in May 1943. Thereafter, the administrator was in a position to renew his earlier petition to the probate court to make distribution of the estate in accordance with the agreements. That he did not do so in the petition he filed on May 3, 1944, is not adequate cause, under the circumstances, for holding that the period of administration, for Federal income tax purposes, extended beyond the time when the probate court approved all the settlement agreements. Upon aprproval of them on May 19, 1944, the estate was ready for distribution. Cf. *Hazel Kirk Carlisle*, 8 T. C. 563, affd. 165 F. 2d 645: *Estate of J. F. Hargis*, 19 T. C. 842; *Marin Caratan*, 14 T. C. 934.

The crux of the present controversy is that Ella LeFiell is to receive during the rest of her life an annuity payable at the rate of $150 per month. But that does not require prolonging the period of administration of the estate, for Federal income tax purposes, for as long as she lives. In the case of *Josephine Stewart, supra,* this Court consid-

ered a similar situation. See, also, *Alma Williams*, 16 T. C. 893, 903. In the *Stewart* case, the taxpayer was the sole person interested in the estate, in addition to being an independent executor. Here, the petitioner is the sole person interested in the LeFiell estate, in addition to being the administrator. In the *Stewart* case, the estate held land covered by a mortgage. Here, the estate held a 60 per cent interest in income of a going business concern, subject to a charge in favor of Ella LeFiell of $1,800 each year, an amount greatly less than the average income of the business which was around $24,000 per year. We held in the *Stewart* case that the kind of obligation of the estate there in question, "was not sufficient cause for a continuation of the period of administration since the property was readily distributable, with the transferee receiving the land subject to the mortgage." *Alma Williams, supra*, p. 903.

The same conclusion must be reached in this proceeding. The obligation of the LeFiell estate to pay Ella LeFiell an annuity of $1,800 each year, for life, was not sufficient cause for continuation of the period of administration of the estate, in so far as the period of administration for Federal income tax must be determined by this Court. All that the LeFiell estate had was a 60 per cent interest in the income of the LeFiell Company which all interested parties agreed in 1943 was to be operated as a going concern rather than liquidated. After the execution of the settlement agreements in May 1943, the payment of $5,000 to Aileen, and the approval by the probate court of all the agreements on May 19, 1944, Sidney LeFiell was the only person who had any interest in the income of LeFiell Company. The estate, such as it was, could have been distributed to Sidney, readily, in 1944, i. e., the whole interest in the income of the LeFiell Company, subject to Ella LeFiell's contractual right to receive $1,800 thereof each year.

This proceeding is not distinguishable from the *Josephine Stewart* and the *Alma Williams* cases. It is true that under the law of Texas, Josephine Stewart was an independent executrix, and that Alma Williams was an independent executrix, whereas in this proceeding Sidney LeFiell was not an independent administrator but was subject to the control of a probate court of California. But, we do not perceive that this difference requires that we reach a different result in this proceeding, particularly since the probate court having jurisdiction heard the parties in 1943 upon the administrator's Petition for Distribution, and subsequently approved all of the settlement agreements. We have stated in other proceedings that the interpretation of the law, if possible, should be to give "a uniform application to a nation-wide scheme of taxation." *William C. Chick, supra; Alma Williams, supra.*

Petitioner relies upon *Frederich* v. *Commissioner, supra.* In particular, he relies upon the Order of March 8, 1951, of the California probate court in which, *inter alia*, the Order set forth that the LeFiell

estate was not in a condition to be closed. We think there are substantial grounds for distinguishing this proceeding from the *Frederich* case as follows: The Order of March 8, 1951, was prepared by the administrator's attorney before the hearing thereon, in an uncontested, nonadversary proceeding, and the Order containing the dicta relied upon here was so prepared for the court before the hearing. Also, as set forth at length above, the court's Order of March 8, 1951, was no more than one to clarify the same court's prior Order of May 19, 1944, which was entered after hearing in a contested, adversary proceeding in April 1943. The court's Order of May 19, 1944, was silent with respect to whether the estate was not in a condition to be closed, and that question was not raised. We recognize the general rule that an adjudication of property rights by a state court of competent jurisdiction is binding on Federal courts. *Blair* v. *Commissioner*, 300 U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35. But there are exceptions to that rule. *Tatem Wofford*, 5 T. C. 1152; *Leslie H. Green*, 7 T. C. 263, 274, affd. 168 F. 2d 994; *Estate of Ralph Rainger*, 12 T. C. 483, affd. 183 F. 2d 587; *First-Mechanics National Bank of Trenton*, 40 B. T. A. 876, affd. 117 F. 2d 127. It is our opinion that this proceeding falls within the exception to the general rule because the evidence shows clearly that the Order of March 8, 1951, of the California probate court did not decide on its merits any real issue, any actually contested issue, involving the question of whether the LeFiell estate was in a condition to be closed; and that the Order was, broadly speaking, in the nature of a "consent decree." In comparison, the probate court's Order of May 19, 1944, was entered after hearing had been held on Aileen Power's objections to the petition of March 26, 1943, for distribution. That hearing was in an adversary proceeding, upon due notice to all. See, also, *Tatem Wofford*, *supra*, p. 1161; and *Leslie H. Green*, *supra*, p. 274; *Estate of Mary Clare Milner*, 6 T. C. 874, 881.

It is held, therefore, that the period of administration ended on May 19, 1944.

The respondent appears to have included the sum of $1,800 in the income of the estate which he has included in petitioner's income in each of the taxable years. We hold that in each taxable year, the petitioner is not taxable on the sum of $1,800. His interest in the estate's 60 per cent interest in the LeFiell Company income was subject to the charge of $1,800 payable to Ella LeFiell out of estate "assets."

There remains the question whether the 5-year period of limitation applies, under section 275 (c), to the years 1944 and 1945. Under this issue the respondent has the burden of proof. *C. A. Reis*, 1 T. C. 9. The respondent has sustained his burden of proof. The evidence establishes that the petitioner omitted from gross income for each year—1944 and 1945, an amount properly includible therein which is in

excess of 25 per centum of the amount of gross income stated in his return for each year—1944 and 1945. Accordingly, the provisions of section 275 (c) apply to the years 1944 and 1945.

There is an issue in this proceeding which has been disposed of by the parties by stipulation. Effect will be given to their stipulation in the Rule 50 recomputation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*